

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN MID-WEST CONVEYOR CO.,

    Plaintiff,

v.

    Civil Action No. 06-CV-14338-DT
    Honorable Denise Page Hood

WENDY K. PIETRANGELO,

    Defendant.
_____/

FILED
OCT - 3 2006
CLERK'S OFFICE
DETROIT

**ORDER DENYING PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER
AND
NOTICE OF HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

**I.    BACKGROUND**

On October 2, 2006, Plaintiff Dearborn Mid-West Conveyor Co. filed a Motion for Temporary Restraining Order, along with a Verified Complaint against Defendant Wendy K. Pietrangelo alleging: 1) Fraud and Misrepresentation (Intentional and Silent) (Count I); 2) Conversion (Count II); 3) Constructive Trust (Count III); and 4) Violation of Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*).

Defendant began her employment with Plaintiff on July 14, 1997 as an Accounts Payable Clerk ("APC"). In 2004, Defendant was promoted to Accounts Payable Manager AS 400 Manager ("APM") and remained in that position until September 25, 2006. (Complaint, ¶ 5) Plaintiff claims that in her role as an APC and APM, Defendant, beginning in 2002 and continuing through September 25, 2006, engaged in a scheme to embezzle, steal and convert Plaintiff's own assets for her own use, benefit and purposes. (Complaint, ¶ 9) Plaintiff claims that Defendant executed her embezzlement scheme by taking blank Dearborn checks from the check stock, applied the rolled

stamp signature and, with the use of a typewriter, made herself the payee, endorsed the checks, and deposited them in her personal account. (Complaint, ¶ 10) Defendant's job responsibilities included receiving and paying invoices of outside vendors. (Complaint, ¶ 11) After Defendant received an invoice, she would create an entry for the invoice in Plaintiff's computer system with the software Construction Management Software ("CMS") and place a hold on it. (Complaint, ¶ 12) Defendant would then obtain the appropriate approval for the invoice. (Complaint, ¶ 13) Once the invoice was approved, Defendant would release the hold in the CMA system and create an electronic cash disbursement log listing all invoices not on hold by date. (Complaint, ¶ 14) The disbursement log would then be printed and David Schull, the Controller, would approve the log. (Complaint, ¶ 15)

Defendant created a second electronic cash disbursement log, generated nonexistent invoices using the names of actual vendors, but would not seek approval for the second cash disbursement log. (Complaint, ¶¶ 17, 20) Defendant would create one to two checks per week payable to herself covered by false entries to vendors. (Complaint, ¶ 18) None of the individual checks totaled more than $3,000.00 since Plaintiff had controls in place that would require an actual signature on a check for checks in excess of $10,000.00. (Complaint, ¶¶ 18-19) Plaintiff's accounting control with its bank, Citibank, included a report of printed checks on a daily basis, called the Positive Pay system. (Complaint, ¶ 24) Defendant maintained the responsibility to electronically transmit this report to Citibank. (Complaint, ¶ 24) The Positive Pay system only tracked check numbers and amounts, therefore, the system did not alert any unusual activity and the checks would clear. (Complaint, ¶ 27).

Plaintiff was alerted to Defendant's alleged fraudulent embezzlement scheme on September 21, 2006 when Defendant's credit union, Advantage One Credit Union, contacted Plaintiff because

of suspicious activity in Defendant's account. (Complaint, ¶ 29) Specifically, Advantage One Credit Union noticed that Defendant had deposited three checks at three separate Advantage One branches on September 19, 2006 and a fourth check on September 20, 2006. The four checks totaled more than $8,000.00. (Complaint, ¶ 30) Plaintiff performed a limited investigation and concluded that the checks were fraudulent. (Complaint, ¶ 32) Plaintiff thereafter began a forensic examination of accounts payable for the past several years and determined that the scheme began in 2002. (Complaint, ¶ 35) Plaintiff claims that Defendant has embezzled approximately $638,000.00 since 2002. (Complaint, ¶ 36) Plaintiff claims it has contacted the Taylor Police Department of Defendant's embezzlement activity. (Complaint, ¶ 37)

Plaintiff seeks a temporary restraining order enjoining Defendant from transferring, releasing, disbursing or delivering any funds maintained by Defendant and to issue a Writ of Attachment on all of Defendant's identifiable assets, including personal and real estate. Plaintiff also seeks an expedited creditor's examination on Plaintiff.

## II.   ANALYSIS

Rule 65(b) of the Federal Rules of Civil Procedures provides the Court with authority to issue a temporary restraining order as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. ...

Fed.R.Civ.P. 65(b).

Fed.R.Civ.P. 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08.

Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. The Supreme Court addressed the issue of whether a district court has the authority to issue a preliminary injunction under Rule 65 for the purposes of protecting assets in anticipation of the judgment of the court. In *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that the district court had no authority to issue a preliminary injunction preventing a defendant from disposing of assets pending adjudication of a plaintiff's claim for monetary damages. *Id.* at 333. The *Grupo Mexicano* case involved a breach of contract claim for money damages by unsecured creditors of a group of investors who purchased notes involving a toll road construction. The Supreme Court recognized the case of the usual preliminary injunction where a plaintiff seeks to enjoin, pending the outcome of the litigation, an "action" that a plaintiff claims is unlawful. *Id.*

at 314. The Supreme Court noted the difference between that injunctive relief and a preliminary injunction to protect an anticipated judgment of the court. *Id.* at 315. The Supreme Court stated that if a district court enters a preliminary injunction to protect assets in anticipation of a judgment of the court, as opposed to enjoining an "act" by the defendant, the defendant is harmed by the issuance of the unauthorized preliminary injunction. *Id.* at 315. An unsecured creditor has no rights at law or in equity in the property of the debtor prior to judgment. *Id.* at 330. The only cases where an unsecured creditor can obtain preliminary injunctive relief to prevent a defendant from disposing of assets pre-judgment include situations where statutes permit the court to do so, such as in a bankruptcy action, or the Securities Act, or under statutes authorizing tax injunctions. *Id.* at 326-328. Traditionally, courts of equity have not interfered with the debtor's disposition of his/her property at the instance of a nonjudgment creditor. *Id.* at 329. A creditor must first obtain a judgment because a debtor has a right to a jury trial on the legal claim. *Id.* at 330. The Supreme Court noted that any prejudgment remedy may be sought under Fed.R.Civ.P. 64 which authorizes use of prejudgment remedies available under State law. *Id.* at 330-331.

In *Grupo Mexicano*, the Supreme Court answered the narrower question of "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court reasoned that historically, a court of equity could not issue such provisional relief in the context of an action for money damages. *Id.* at 1968-69 (noting the "general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property"). The Supreme Court struck down the injunction issued by the lower court. *Id.* at 333. The Supreme Court, however, distinguished cases in which

5

a plaintiff seeks equitable relief. *Id.* at 324-25. *See e.g., Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (upholding a preliminary injunction that prevented a party from transferring assets as "a reasonable measure to preserve the status quo pending final determination of the questions raised by the bill" where the complaint stated claims for equitable relief (namely, rescission of contract and restitution)). The Supreme Court stated that *Deckert* was distinguishable from *Grupo Mexicano* because, as the Supreme Court took pains to explain, "the bill stated a cause [of action] for equitable relief." The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available to a creditor's bill seeking equitable assistance in the collection of a legal debt. *Id.* at 325 (quoting *Deckert*, 311 U.S. at 288).

Plaintiff in this case asserts both money damages and equitable relief in the form of a constructive trust in Count III of the Complaint. Pursuant to *Grupo Mexicano*, this Court cannot issue the injunction on Plaintiff's claims for money damages. However, as to the claim of constructive trust, the Court may be able to issue an injunction as to these assets. Courts have held that in order to issue an order freezing certain assets, the court must have sufficient evidence to show a threat that an individual will dissipate the assets. *See Newby v. Enron Corporation*, 188 F. Supp. 2d 684, 707-08 (S.D. Tex. 2002) In this case, Plaintiff has not submitted any evidence that there is a threat that Defendant will dissipate. Plaintiff's Motion for Temporary Restraining is denied.

As to the request for expedited discovery, the Court will address that issue during the preliminary injunction hearing.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Temporary Restraining Order **(filed October 2, 2006)** is DENIED.

IT IS FURTHER ORDERED that **Plaintiff's Motion for Preliminary Injunction is scheduled to be heard on Friday, October 13, 2006, 1:00 p.m.**

_____
DENISE PAGE HOOD
United States District Judge

DATED: **OCT 0 3 2006**